<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE EMILIO CORDERO-REZABALA, | |
| Petitioner, | Civil Action No. 24-4010 (BRM) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the petition for a writ of habeas corpus ("Petition") of Petitioner Jorge Emilio Cordero-Rezabala ("Petitioner") brought pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Petitioner seeks to have his extradition certificate to the Republic of Ecuador ("Ecuador") vacated. Respondents filed a response to the Petition (ECF No. 4) and Petitioner filed a reply (ECF No. 12). For the reasons set forth below, Petitioner's habeas petition is **DENIED**, and no certificate of appealability shall issue.

**I. BACKGROUND**

Petitioner, a citizen of the United States and Ecuador, is currently awaiting extradition to Ecuador, where he is wanted in connection with the November 11, 2018 alleged sexual abuse of E.M.C.C. (the "victim"). (*See* Civ. No. 23-mj-11228, ECF No. 1 at 86, 102, 205-06.) An arrest order for Petitioner was issued on September 27, 2019, in Ecuador, under the charge of sexual abuse, Article 170 of Ecuador's Comprehensive Organic Criminal Code. (*Id.* at 121.) Pursuant to the Extradition Treaty between the United States and Ecuador, the Government of Ecuador submitted a formal request for extradition, and the United States Attorney's Office for the District

of New Jersey filed an extradition complaint in this district on December 28, 2023. (*See id.* at 1–6; 7 ¶ 3.) The District Court issued a warrant for Petitioner's arrest on the same day. (*Id.*, ECF No. 2.)

Pursuant to the arrest warrant, Petitioner was arrested on January 2, 2024. Petitioner opposed the extradition complaint, arguing (1) the complaint is time-barred, (2) the crime alleged is not covered by the Extradition Treaty, and (3) there is insufficient evidence to establish probable cause. (*See id.*, ECF No. 11.)  The Honorable Andre M. Espinosa, U.S.M.J. held an extradition hearing on February 26, 2024, during which he heard argument and admitted Ecuador's extradition request into the record. (*Id.*, ECF Nos. 14, 15.) Magistrate Judge Espinosa issued an Opinion on February 29, 2024, and an amended Opinion on March 6, 2024, pursuant to 18 U.S.C. § 3184, finding: (1) the court had jurisdiction; (2) Petitioner was within the court's personal jurisdiction; (3) the Extradition Treaty between the United States and Ecuador was in full force and effect at all relevant times; (4) the Extradition Treaty, pursuant to Article 2nd, Items 2nd and 21st, encompasses the offense charged; and (5) there is probable cause to believe Petitioner committed the offense for which extradition is sought. (*Id.*, ECF No. 22 ¶¶ 1–8.) Magistrate Judge Espinosa found the evidence before the court, which consisted of the documents summited by Ecuador, "was sufficient to justify Petitioner's committal for trial, had the offense occurred in the United States, for an offense punishable under laws in the United States by deprivation of liberty for a maximum period of more than one year, or by a more severe penalty." (*Id.*, ECF No. 22 ¶ 9.)

Petitioner filed this habeas petition on March 19, 2024. (ECF No. 1.) The Government responded on April 5, 2024. (ECF No. 4.) Petitioner replied on April 15, 2024. (ECF No. 12.)

## II. LEGAL STANDARD

The process for extraditing a person from the United States to a requesting country is laid out in 18 U.S.C. § 3184. An extradition court has the limited task of determining whether there is sufficient evidence "to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. The magistrate judge's extradition inquiry "is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). The final step requires the judicial officer to "determine[ ][if] there is probable cause to believe that the defendant is guilty of the crimes charged." *Sidali v. INS*, 107 F.3d 191, 195 (3d Cir. 1997).

To find probable cause, the judicial officer must decide whether there is "competent evidence to justify holding the accused to await trial, and *not* . . . whether the evidence is sufficient to justify a conviction." *Id.* at 199 (emphasis added) (quoting *Peters v. Egnor*, 888 F.2d 713, 717 (10th Cir. 1989)). "[P]roperly authenticated '[d]epositions, warrants, or other papers . . . offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence [at the] hearing.'" *Harshbarger v. Regan*, 599 F.3d 290, 293 (3d Cir. 2010) (quoting 18 U.S.C. § 3190). Hearsay evidence is also admissible. *Id.* If the court finds that the request falls within the treaty and satisfies the Extradition Statute, it must issue a certificate of extraditability to the Secretary of State, who makes the ultimate decision whether to extradite the individual. 18 U.S.C. § 3184.

Once the judicial officer has acted, his/her decision is not a final order under 28 U.S.C. § 1291. It cannot be appealed directly. Instead, a person detained pending extradition may petition

the district court for a writ of habeas corpus under § 2241, in effect challenging the legality of the custody brought about by the judicial officer's order. *See Harshbarger*, 599 F.3d at 291–92 & n.1.

The district court's habeas review is very deferential. Extradition is an executive function, not a judicial one, and the habeas court does not engage in a wholesale reweighing of the equities supporting extradition. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Th[e] writ . . . is not a means for rehearing what the [judicial officer] already has decided.") Instead, the habeas court— this Court—considers only "whether the [judicial officer] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006). This is akin to abuse-of-discretion review. *See Bolanos v. Avila*, No. 09–1208, 2009 WL 3151328, at *3 (D.N.J. Sept. 24, 2009) (Linares, J.) (citing *Sidali*, 107 F.3d at 199); *see also Haxhiaj v. Hackman*, 528 F.3d 282, 287 (4th Cir. 2008) (describing district court habeas extradition review as "at least as deferential, if not more so, than that applied to a magistrate judge's decision to issue a search warrant"); *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) ("Orders of extradition are sui generis. They embody no judgment on the guilt or innocence of the accused but serve only to insure that his culpability will be determined in another and, in this instance, a foreign forum.").

### III.   DECISION

In reviewing the underlying extradition order presented in this petition, the Court "may consider only whether the magistrate [judge] had jurisdiction, whether the offense charged is within the treaty, and by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006).

### A. Dual Criminality

Petitioner argues the Extradition Treaty does not list sexual abuse, as defined in Article 170 of Ecuador's Organic Integral Penal Code, as an extraditable crime. (ECF No. 1 at 12-14.) The Extradition Treaty incorporates the principal of dual criminality, making it extraditable to "attempt" to commit any of the crimes listed in the Treaty when the crime is "punishable in the United States and Ecuador with a penalty of not less than one year in prison." (Civ. No. 23-mj-11228, ECF No. 1 at 14, Extradition Treaty.) The Court considers whether the charged offense "falls within the scope of the Treaty, and whether the offense is illegal in both countries." *In re Extradition of Bolanos*, 594 F. Supp. 2d 515, 518 (D.N.J. 2009). When determining whether the offense for which extradition is sought is illegal in both countries, it is not necessary that "the elements, purposes, or punishment for foreign offenses be identical to ours." *United States v. Riviere*, 924 F.2d 1289, 1302 (3d Cir. 1991). Instead, the rule of dual criminality is satisfied when "the acts charged [are] proscribed in each nation." *Id.*; *see In re Extradition of Aquino*, 697 F. Supp. 2d 586, 596 (D.N.J. 2010).

Here, the Extradition Treaty between the United States and Ecuador allows for extradition of

> such persons as may have been convicted of or may be accused of the crimes set forth in the following article, . . . it being understood that this is only to be done when the criminality shall be proved in such a manner that, according to the laws of the country where the fugitive or accused may be found, such persons might be lawfully arrested and tried had the crime been committed within its jurisdiction.

(Civ. No. 23-mj-11228, ECF No. 1 at 10, Extradition Treaty, Art. I.) Ecuador represents that Petitioner committed the offense of sexual abuse, in violation of Article 170 of Ecuador's Organic Integral Penal Code. (*Id.* at 102.) Article 170 defines sexual abuse as "the person who, against the will of another, executes on her or forces her to execute on herself or another person an act of

5

sexual nature, without there being penetration or carnal access, will be punished with a custodial sentence of three to five years." (*Id.* at 102-03.) Extraditable crimes under the Extradition Treaty include rape and attempt to commit such rape. (*Id.* at 11, 14, Extradition Treaty, Art. 2nd, Items 2nd and 21st.) Ecuador's submissions allege Petitioner grabbed the victim, pulling her on top of him, putting his hands on her buttocks and vagina, wanting to put his fingers in her, while he was wearing boxers. (*Id.* at 102, 206.) Moreover, the activities of which Petitioner is charged, if committed in the United States, would be subject to prosecution under federal and state laws, including 18 U.S.C. § 2242(3)[1], 10 U.S.C. § 920(a) and N.J. Stat. § 2C:5-1.a(3) in connection with § 2C:14-2.c.(1)[2]. The Extradition Treaty makes attempted rape an extraditable crime, and the laws of Ecuador and the United States make the attempted penetration of another without their consent a punishable crime. Thus, the Court concludes that attempted sexual assault in the United States and Ecuador are substantially analogous and there is dual criminality in Petitioner's case.

---

[1] Section 2242(3) of Title 18 of the U.S. Code provides, in relevant part: "Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison [] knowingly . . . engages in a sexual act with another person without that other person's consent, to include doing so through coercion; or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life." Section 2246(2)(C) defines a "sexual act" to include: "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

[2] New Jersey Statute § 2C:5-1.a(3) defines an "attempt to commit a crime" where the defendant "[p]urposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Section 2C:14-2.c(1) provides, in relevant part: "An actor is guilty of sexual assault if the actor commits an act of sexual penetration with another person . . . using coercion or without the victim's affirmative and freely-given permission, but the victim does not sustain severe personal injury[.]" Section 2C:14-1.c defines sexual penetration to include the insertion of a "finger or object into the anus or vagina" by the actor. Sexual assault is a crime of the second degree, subject to a sentence of imprisonment between five years and 10 years. N.J. Rev. Stat. § 2C:43-6(a)(2).

Furthermore, the State Department's declaration from Amy Lindsay, Attorney Advisor in the Office of the Legal Advisor, declares that "[the] offenses for which extradition is sought is covered by Article 2nd, Items 2nd and 21st of the Treaty." (Civ. No. 23-mj-11228, ECF No. 1 at 7.) The Court gives Attorney Lindsay's declaration deference. *See In re Extradition of Salazar*, 2010 WL 2925444, at *4 (S.D. Cal. July 23, 2010) (citing *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) (opinion of State Department on whether a crime is covered by a treaty is entitled to weight and deference)). Therefore, the Court finds that the Extradition Treaty authorizes his extradition on the sexual abuse charges in Ecuador.

### B. Probable Cause

Petitioner challenges whether there was sufficient evidence supporting a finding of probable cause. (ECF No. 1 at 14–17.) Petitioner argues the only evidence to support the charge against him is the victim's testimony and corroboration by her mother. (*See id.*)

In an extradition hearing, probable cause is found where there is "evidence that would support a reasonable belief that [the defendant] was guilty of the crime charged." *Sidali*, 107 F.3d at 199 (internal quotations omitted). The Third Circuit has consistently noted the limited showing required for establishing probable cause: "It is not necessary in extradition proceedings that the evidence against the respondent be such as to convince the committing judge or magistrate of his guilt beyond a reasonable doubt, but only such as to afford reasonable ground to believe that the accused is guilty of the offense charged." *Id.* (quoting *United States ex rel. Lo Pizzo v. Mathues*, 36 F.2d 565, 568 (3d Cir. 1929)). The decision of the magistrate judge is reviewed for abuse of discretion, and must be upheld "if there is any competent evidence in the record to support it." *Id. See also Hoxha*, 465 F.3d at 560 (reviewing magistrate judge's finding for abuse of discretion).

Judge Espinosa found:

> The evidence before this Court is sufficient to justify the Fugitive's committal for trial, had the offense occurred in the United States, for an offense punishable under laws in the United States by deprivation of liberty for a maximum period of more than one year, or by a more severe penalty.

(Civ. No. 23-mj-11228, ECF No. 22 at 2 ¶ 9.) Judge Espinosa noted the court's finding rested upon

> the documents the Republic of Ecuador submitted []in this matter, including a certified statement from the President of the National Court of Justice of Ecuador (Ivan Saquicela Rodas), which cites evidence including victim and witness statements describing the Fugitive's actions and identifying the Fugitive as the one who committed the extraditable offense.

(*Id.*) These documents include a probable cause report that summarizes the following evidence against Petitioner:

> According to the complaint filed, on Sunday, November 11, 2018 at 9:30 a.m., in a situation that the citizen with the initials E.M.C.C., received a message from her uncle [Petitioner] from the number 0986126603 to her number 0996408386 asking her where she was because he needed help cleaning the house, so she went with her parents to the house of her paternal grandmother located in the Parrish Los Esteros, Av. 105 1112th Street, so she went up to the second floor of that house, her parents staying visiting her grandmother, he told [her] that as soon as she got home to go up to his room because he had brought her some gifts from the United States, she already being in the room, he told her to lie on top of him to which she answered no, he said to lie next to him, she said no, he immediately grabbed her hard and raised her on top of him, she told him to let go of her, he turned her and put his hand in her buttocks and in her vagina, touching her, wanting to put his fingers in her and began to fondle her chest and all of her body, she quickly said no, released him and he took her by force and laid her on top of him, he was already in a boxer at that time, she couldn't scream she as so scared that she was stunned, he told her that he wanted her to give him a full massage but her parents were downstairs, she ran to see her mother and was silent for several days. He told [her] by message to see each other, that he wanted to make things clear, out of fear she did not accept.

(*Id.*, ECF No. 1 at 126.) The documents also consisted of a Social Worker's Report, which indicated the victim described a similar set of allegations to the social worker. (*Id.*, ECF No. 1 at

8

209-216.) Also included is a statement from the victim's mother, who indicated the victim was visibly shaken after visiting Petitioner in his bedroom and the victim later reported similar allegations to her mother. (*Id.*, ECF No. 1 at 217–18.) A protection order for the victim, that relates similar allegations made by the victim against Petitioner, is also included in the documents provided to Judge Espinosa. (*Id.*, ECF No. 1 at 229–32.) The documents present evidence "warranting the finding that there was reasonable ground to believe the accused guilty.*" Hoxha*, 465 F.3d at 560.

Petitioner also argues that the extradition complaint lacks testimonies from other individuals, another psychologist report, a gynecologist report, information regarding the other legal cases targeting his property in Ecuador, or any verifiable physical evidence. Judge Espinosa excluded evidence Petitioner proffered that questioned the credibility of the victim as improper contradictory evidence. (*See* ECF No. 13, Extradition Hearing Tr. at 55:10-20.) "The range of evidence that a defendant may introduce as to probable cause at an extradition hearing is limited." *Hoxha*, 465 F.3d at 561. A defendant at an extradition proceeding may offer evidence that tends to explain the Government's case of probable cause; he is not permitted, however, to introduce evidence on the issue of guilt or innocence—i.e. evidence that contradicts the demanding country's proof. *See e.g.*, *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978); *Hoxha*, 465 F.3d at 561, citing *Barapind v. Enomoto*, 360 F.3d 1061, 1069 (9th Cir. 2004). Such "explanatory" evidence, evidence that "'might [explain] ambiguities or doubtful elements' in the government's case[,]" differs from "contradictory" evidence, which is evidence that simply contradicts the evidence of probable cause presented by the government. *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (citing *Collins v. Loisel*, 259 U.S. 309, 315–16 (1922) and *Carlton v. Kelly*, 229 U.S. 447, 461 (1913)). Moreover, the purpose of an extradition hearing is not to resolve issues concerning any

9

inconsistencies of the evidence. *See Castaneda v. United States*, 2005 WL 19457 at *3 (D. Minn. Jan. 3, 2005). "The proper forum for raising facts contradicting the requesting country's proof, certain defenses and issues surrounding witness credibility, bias, or motive is not the extradition proceeding but Petitioner's trial in Mexico." *Id.* (citing *United States v. Wiebe*, 733 F.2d 549, 553 n.4 (8th Cir. 1984)).

Here, Judge Espinosa ruled that the evidence Petitioner proffered challenged the victim's credibility and was excluded as contradictory evidence. (ECF No. 13, Extradition Hearing Tr. 2/26/24 at 55:2–5.) Judge Espinosa found as follows:

> [The Court is] constrained by controlling law to grant the Government's motion in limine to preclude the evidence it identified among the exhibits attached to Mr. Cordero's opposition to his extradition. Those exhibits include the affidavits of certain of the victim's family member contradicting the victim's assertions about this offense as well as the proceedings of an alternative tribunal or prosecutor that concluded with a finding of no bases is pursue criminal charges before the opposition conclusions was reached by a different prosecutor in Ecuador on September 27, 2019.

(*Id.* at 55:10–20.)

Judge Espinosa did not abuse his discretion in reaching this conclusion. Accordingly, Judge Espinosa did not err by excluding this evidence.

### C. Statute of Limitations

Petitioner argues that the statute of limitations has lapsed on his charges. (ECF No. 1 at 18–19.) Petitioner argues that within the United States, the five year statute of limitations for the charges he faces would have lapsed on November 11, 2023. (*See id.*)

Here, the Ecuadorian extradition submissions explain the relevant statute of limitations on Petitioner's charges. The submissions indicate under the Organic Integral Criminal Code, article 417, numeral 4:

10

> [I]f the criminal proceeding has been initiated, the public exercise of the action shall prescribe in the same period of time as the maximum Penalty of deprivation of liberty, provided for in the criminal type, counted from the date of initiation of the respective investigation. In no case shall the public exercise of the action prescribe in less than five years.

(Civ. No. 23-mj-11228, ECF No. 1 at 170.) The President of the Ecuadorian National Court of Justice asserted that the case against Petitioner started on April 22, 2019, and the maximum sentence foreseen for the crime being tried is five years, consequently, as of the present date, the legal time necessary of the statute of limitations of the criminal action has not lapsed." (*Id.*, ECF No. 1. at 170.) Stated differently, the Ecuadorian statute of limitations on Petitioner's crimes will expire five years after the April 22, 2019 initiation of the investigation into Petitioner's charges, or April 22, 2024. Judge Espinosa indicated that the "treaty between the United States and Ecuador does not have a statute of limitation generally covering all offenses that might be extraditable under the treaty and specifically covering the particular offense in this case." (ECF No. 13, Extradition Hearing Tr. 2/26/24 at 10:24–11:3.)

"[A]bsent a specific treaty provision, the statute of limitation may be raised as a defense to criminal proceedings only after return to the requesting state." *Kamrin v. United States*, 725 F.2d 1225, 1227 (9th Cir. 1984); *accord Merino v. United States Marshal*, 326 F.2d 5, 12 (9th Cir. 1963); *Murphy v. U.S.*, 199 F.3d 599, 602–03 (2nd Cir. 1999); *Freedman v. United States*, 437 F. Supp. 1252, 1263 (N.D. Ga. 1977); *see also Theron v. United States Marshal*, 832 F.2d 492, 499 (9th Cir. 1987) (stating that the "inquir[ies] concerning dual criminality and the statute of limitations [are] distinct"—that is, "[t]he focus of the [dual criminality inquiry] is on the conduct that the law criminalizes, not the statute of limitations"). Petitioner fails to point to any language in the Extradition Treaty between Ecuador and the United States, nor can the Court find any, that directs the statute of limitations under the analogous United States criminal law should apply,

11

rather than the Ecuadorian statute of limitations. As noted above, the President of the Ecuadorian National Court of Justice indicated that Ecuador's statute of limitations on Petitioner's charges does not run until April 22, 2024. *See Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011) ("U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty." (citing *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 565 (2d Cir. 1963))). Therefore, the Court finds no error in the decision to defer to the Ecuadorian statute of limitations.

### D. The Rule of Non-Inquiry

Petitioner argues humanitarian concerns should prevent his extradition. Petitioner argues the Court should grant him habeas relief due to his serious medical needs and "lack of medication" in Ecuador, the harsh conditions in Ecuadorian prisons, and corruption in the country of Ecuador. (ECF No. 1 at 19-20, 21-23.)

The scope of this habeas review is generally limited by the doctrine of "non-inquiry." As relevant here, the doctrine entails that humanitarian considerations "are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable." *Hoxha*, 465 F.3d at 563; *see also Sidali*, 107 F.3d at 195 n.7 ("[W]e note that it is the function of the Secretary of State—not the courts—to determine whether extradition should be denied on humanitarian grounds."). Therefore, under the rule of non-inquiry, "courts refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country." *Hoxha*, 465 F.3d at 563 (internal quotation marks omitted) (quoting *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997). The purpose of this rule is to serve "interests of

international comity by relegating to political actors the sensitive foreign policy judgments that are often involved in the question of whether to refuse an extradition request." *Id.* "It is not that questions about what awaits the [fugitive] in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *Kin-Hong*, 110 F.3d at 111. In other words, "[t]he Secretary [of State] exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations-factors that may be beyond the scope of the magistrate judge's review." *Sidali*, 107 F.3d at 195 n.7.

Here, Petitioner asks this Court to address his humanitarian concerns. However, he must address those concerns with the Secretary of State following certification of extraditability by this Court. The United States State Department is in the best position to determine whether Petitioner's extradition is appropriate. Therefore, this Court will abide by the rule of non-inquiry and reserve arguments regarding humanitarian concerns for the humanitarian concerns for the Secretary of State.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**. An appropriate order follows.

Dated: April 18, 2024

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

13